DECISION
The plaintiff in this case claims that the defendant owes him a balance on his legal fee for representing her in a divorce proceeding in the Bristol County Family Court of the Commonwealth of Massachusetts. The defendant denies that she owes the plaintiff any amount on his fee, she says, because he has failed to prove that he and his associate rendered competent and faithful legal services on her behalf in the domestic relations proceedings in that Massachusetts Court.
It is uncontroverted that the defendant retained the plaintiff in September 2000 to represent her in the divorce proceeding pending in the Commonwealth of Massachusetts. The parties entered into a written fee agreement on October 3, 2000 in Woonsocket, Rhode Island. The defendant had already paid the plaintiff a retainer of $2500.00, but no flat fee or any hourly rate was agreed upon between the parties in the writing. The agreement specifically authorized the defendant to retain associate counsel.
The plaintiff is admitted to practice law in Massachusetts, but the bulk of his practice is in Rhode Island in domestic relations matters before the Rhode Island Family Court. Pursuant to the authority in the agreement the plaintiff retained as associate counsel in Attleboro, Massachusetts, a lawyer, Mr. Vincent Germani, with considerable experience before the Courts of the Commonwealth including the Family Court and whose offices in Attleboro, Massachusetts were closer not only to the County Court, in which the divorce action was pending but also to the location of the bulk of the plaintiff's husband's estate, which would be subject to division between the parties to the divorce by the Family Court.
The defendant suggested in the course of trial that retaining "local"counsel by the plaintiff was unnecessary and irresponsible. The defendant made no objection at that time, even though it was clear to her that the plaintiff had retained local counsel. The plaintiff and his associate for the most part hewed to a conscientious division of legal labor in their representation of the plaintiff. Mr. Germani prepared the legal papers for filing in Family Court, researched the facts and preserved documentary evidence for presentation by the plaintiff who appeared for the defendant in proceedings before the Court. The record discloses a general effort to avoid double-billing, so that both lawyers did not, except on one minor occasion, charge the plaintiff twice for the same legal services.
Furthermore, having divided the task of mutual legal representation of the plaintiff between them, each lawyer, at the request of the defendant, separately itemized the respective service he rendered and accounted for the time he spent in pursuing her interests in the litigation. The defendant insists that the plaintiff has failed to prove that the bulk of the out-of-court services claimed to have been rendered by the Attleboro lawyer were reasonably necessary, and, to the extent they might have been necessary, were competently performed. They were not completely necessary, she contends, because they had already been performed, presumably satisfactorily, by Mr. Christopher Long, her previous counsel in the case. They were not competently performed, she claims, because Mr. Germani failed to discover an accurate and complete evaluation of her former husband's assets.
The chief thrust of Mr. Germani's mission was to discover and document the plaintiff's husband's net worth to provide the basis for an equitable division of the parties' marital assets. The bulk of the husband's net worth consisted of his interests in family real estate holding business entities. In no case of any substantial holding did he have a controlling interest. Generally, he held a one-third interest in the control of the equity in real estate, subject to mortgage encumbrances. Accordingly, lawyers for the defendant were required first to discover the real estate assets held by the family business entities; then, to appraise the value of the equity in the real estate in each of those entities; and finally, to assess the value of the husband's minority interests, mostly subject to cross-purchase agreements, in those entities. Based on the testimony of Mr. Germani as well as that of the defendant's previous counsel in the divorce matter, the Court concludes that the defendant's lawyers faced a daunting and plainly expensive task, with only a limited prospect of rebutting the husband's valuations, which he filed under penalties of perjury with the Family Court. It is easy with the unerring accuracy of hind-sight to suggest further research that the plaintiff and his associate might have performed, but there is only speculation as to what the fruit of such an indeterminate venture would have been. In any event, there is no expert opinion evidence to contradict the inference from Mr. Germani's testimony that it was his professional judgment that Mr. Brenner had sufficient information about Mr. Pitas's net worth to proceed to trial or to negotiate a fair settlement. The Court has considered the testimony of Mr. Christopher Long, who represented the defendant prior to the plaintiff's appearance, that he valued the husband's interests at considerably more than the husband had declared. This Court regards Mr. Long's assessment as speculative and not based on valid evidentiary opinions from expert appraisers.
The defendant also contends that the services rendered by Mr. Germani were unnecessary because he did no more than replicate or reproduce work already done by Mr. Long, who had been the defendant's previous counsel in the divorce case. A substantial portion of Mr. Germani's time was devoted to assembling the evidentiary documentation for inclusion in a "trial book", required under the rules of practice of the Massachusetts Family Court. The record is clear that Mr. Long had already gathered a substantial portion of the material included in the trial book as it was eventually prepared to be filed in court and served on the opposition. There is, however, no expert opinion that Mr. Germani did not need to examine and professionally verify the accuracy, completeness and utility of the material gathered and preserved by Mr. Long, irrespective of the reason Mr. Long was no longer representing the defendant. Although Mr. Long did testify that a considerable amount of his work was replicated in the trial book, the Court does not accept Mr. Long's opinion that the time spent by Mr. Germani was wasted time, for which the plaintiff is not entitled to be compensated.
Finally, with regard to Mr. Germani's services the defendant argues that certain of the services, as described in the hourly break-out of his service, did not require the time and attention of a lawyer. She points to some time spent researching titles, drafting documents and filing papers with the Court. While this Court is fully aware of the economics in fees to clients achievable through the increasing use of paralegal assistants, no expert evidence was represented that any of the services rendered by Mr. Germani should have been performed by other than a qualified lawyer. Argument of counsel, however well presented and logical, is no substitute for evidence. The Court, likewise, is not permitted to base its decision in legal fee disputes on its own experience as lawyer and judge.
The Court is satisfied that the plaintiff has proved by a fair preponderance of the competent credible evidence that Mr. Germani, as the plaintiff's associate, rendered competent, qualified and reasonably necessary professional legal services over a period of 65.45 hours between and including September 28 and December 18, 2000, for which the plaintiff is entitled to be compensated by the defendant.
As to the services rendered directly by the plaintiff to the defendant the defendant argues that the plaintiff has failed to prove that he earned a fee for his services because he has failed to prove that his services were competently rendered. The plaintiff has had more than thirty-five years in the practice of law concentrating in domestic relations matters. No expert testified that the plaintiff demonstrated anything less than the appropriate skill to handle the defendant's matter acquired from years of education and experience.
The plaintiff argues that, because the defendant had not discovered the value of the marital property subject to equitable distribution by the Family Court he was not adequately prepared to negotiate a settlement or litigate the defendant's claim. There is not even a scintilla of credible evidence that the fair value of Mr. Pitas' assets had not been fully disclosed at the time the plaintiff negotiated a settlement of the defendant's claim in Family Court. The plaintiff did seek, and was granted a continuance of the trial in order to pursue further discovery from Mr. Pitas. It would, however, be a matter of the sheerest conjecture to find that any such discovery would disclose a different valuation of the husband's share in the various family businesses. Obviously, the plaintiff in the exercise of his professional judgment felt that he knew enough to engage in meaningful settlement negotiations, even if he was hesitant to proceed to litigation. There was some testimony from Mr. Long, based on tax returned filed by the business and his siblings, which would suggest that Mr. Pitas was understating his net worth. Mr. Long never testified that he held that conclusion, as he could not, with the requisite degree of professional certainty to give it evidentiary value, nor was Mr. Long qualified as an expert in the appraisal of real property in Bristol County, Massachusetts.
Next, the defendant contends that the plaintiff did not represent her competently because the Separation Agreement he negotiated on her behalf and urged her to execute was not in her best interest. The plaintiff testified that until serious negotiation commenced in December 2000 in the courthouse in New Bedford, Massachusetts the only offer of settlement from the defendant's husband was the sum of $45,000.00 in payment for the defendant's one-half interest in the marital domicile. After negotiation the plaintiff obtained a settlement offer which is memorialized in a Separation Agreement, received in evidence as Plaintiff's Exhibit 6. The agreement provides that the defendant receive alimony in the sum of $200.00 weekly during the parties' joint life until January 1, 2004. As originally proposed by the husband, alimony would have terminated on some indefinite date, when and if he sold his interests in his family's business, presumably to finance an equitable distribution of those interests. In addition, the plaintiff negotiated the elimination of a provision that alimony payments by the husband would be credited to him in a final property division settlement. The plaintiff negotiated an increase in the valuation of the marital domicile from $90,000.00 to $140,000.00. As a consequence, the wife's share was increased from the husband's original offer of $45,000.00 to $70,000.00.
The principal fruit of the plaintiff's negotiation efforts is displayed in paragraph 4 of Article IV, entitled: Personal Property, of the Separation Agreement. According to his financial statement filed with the Family Court (Plaintiff's Exhibit 7), the husband showed assets of $626,948.44, including $90,000.00 as the appraised value of the marital home. Thus, there remained for further division assets of a value of $536,948.44. It was suggested by Mr. Long in his testimony that Mr. Pitas had understated the value of his interests in his family's real estate holding. Mr. Long, however, did not qualify as an expert appraiser of the value of interests in real estate in the Commonwealth of Massachusetts. Accordingly, his testimonial suggestion, however persuasive and interesting it may be as argument, cannot be accorded evidentiary weight.
It is clear from the Separation Agreement, as originally drafted by counsel for the husband, that the husband recognized that he could expect to compensate the defendant for her share of the marital assets held by the husband. The amount was originally left open on the draft proposal submitted to the plaintiff and his client. Mr. Long insisted in his testimony that the husband's counsel had proposed an amount of $250,000.00 as the defendant's share. The defendant testified that she had relayed that offer to the plaintiff some time after she retained him in the divorce case. The plaintiff denies that he was ever advised of a purported offer of $250,000.00. Mr. Long preserved no written memorialization of the presumably oral offer. The draft Separation Agreement does not contain that settlement offer as would be expected if the husband's counsel had proposed it. On this issue, the Court accepts the plaintiff's testimony and rejects that of the defendant and her former counsel.
Furthermore, the husband wanted to tie the payment of the amount of the division when he would expect to receive a sum of money for his interests, when he sold out or retired from his family's business, although he would continue to pay her alimony until that date, for which he would receive credit. The plaintiff, however, negotiated a lump sum of $280,000.00, payable in three annual installments on January 1, 2002, 2003 and 2004 in the amount of $93,333.00 on each date. At the time of trial, the defendant had been paid the first two installments. In addition, the defendant had received $70,000.00 for her share of the marital domicile, and was collecting her weekly alimony.
The defendant was particularly concerned about health insurance, since she claimed to suffer from multiple sclerosis and other associated disorders. As proposed by the husband, he was to maintain his health plan then in effect for the defendant's benefit as long as she was eligible, but in the event her change of status from spouse to ex-spouse resulted in a premium increase she was to bear the cost of the additional amount. After negotiation, the husband agreed to maintain health insurance for the defendant, without any charge to her until he reached age 65.
This Court concludes that the Separation Agreement was the fruit of informed, vigorous negotiation by able counsel. There is not an iota of evidence that the defendant was not ably represented.
The plaintiff reviewed the agreement in detail with defendant and explained all its provisions. The defendant initialed each page and signed the agreement. She appeared before a notary public and acknowledged the agreement to be her free act and deed. Eventually, she appeared before the Court, and agreed that the financial disclosures made by her husband were acceptable to her. She swore that she had read the agreement, understood it and signed it freely and voluntarily. She acknowledged that the agreement was fair and reasonable, and was satisfied with the service of her attorney. This Court has read the transcript of that hearing and listened to the audio tape. The defendant was clearly not hysterical as she claimed at trial.
This Court has carefully considered the defendant's testimony of the events leading up to her execution of the separation agreement. In addition, the Court has heard her version of the events which transpired at the hearing on approval of the Separation Agreement. This Court rejects any suggestion that she was mislead or coerced into signing the agreement by the 8 plaintiff. Tired, she may have been. Nervous and anxious, as well. Emotionally over-wrought, too. Nonetheless, on balance, this Court concludes that she knew what she was doing. She was accepting a less than perfect deal as the best she was going to be able to get. Unfortunately, after the deal was done, as so frequently happens, she had second thoughts. Unable to succeed in vacating the Family Court's approval of the Separation Agreement, she has turned her dissatisfaction with her agreement against her attorneys by refusing to pay them in full for their services.
Plaintiff's Exhibit 4 is an itemized statement of the plaintiff's time and services rendered on behalf of the defendant.
A careful review of the plaintiff's time discloses the following unexplained irregularities for which he is not entitled to be compensated:
(1) On October 18, 2000, the plaintiff charged to the defendant one hour of a seminar regarding the use of appraisers in divorce cases.
(2) On October 23, 2000, the plaintiff charged two hours for the preparation and filing of a complaint for divorce. On October 3, 2000, Mr. Germani charged 1.25 hours for preparing a complaint for divorce and on October 4, 2000 he charged .2 hours for attending to filing the complaint.
(3) On October 20-21, 2001, the plaintiff charged twelve hours for the cryptic entry "Athena secretary 12 hours, copies for client."
Otherwise, the Court is satisfied that the plaintiff has proved by a fair preponderance of the competent credible evidence that he rendered 58.95 hours of competent, qualified, professional legal services to the defendant reasonably necessary to represent her in the divorce proceedings, for which he is entitled to be compensated. It is not contested that the plaintiff incurred costs in the amount of $507.46, for which he is entitled to be reimbursed.
There remains only to assign an hourly rate to the combined times of Messrs. Germani and Brenner of 124.5 hours. In this regard the Court has the benefit of two expert opinions tendered by two qualified non-party witnesses. Mr. Robert Mitson, called by the plaintiff, testified that lawyers practicing in Bristol County Massachusetts Family Court charged an hourly rate ranging from $175.00 to $275.00, depending on a number of factors. Mr. Christopher Long, called by the defendant, testified that a reasonable rate for the same services would range from $125.00 to $175.00 per hour. The mid-point of their combined range of $125.00 to $275.00 is $200.00, which the Court adopts as a reasonable rate. Accordingly, the plaintiff has earned a combined fee for himself and his associate of $24,900.00, of which he has received a retainer of $2500.00, leaving a balance of $22,500.00, together with a reimbursement for costs advanced in an amount of $507.46, for a total indebtedness from the defendant of $23,007.46.
The plaintiff's claim for counsel fees pursuant to G.L. § 9-1-45 is denied. There were some justiciable issues of fact raised by the defendant in this case. Just barely.
Accordingly, judgment will enter for the plaintiff for $23,007.46, together with interest at the statutory rate since March 19, 2001 and costs.